**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| Plaintiff, | |
| v. | Crim. No. 23-433 (PAD) (MBA) |
| **[3] MEILYN VÁZQUEZ-ALVAREZ,** | |
| Defendant. | |

## <u>REPORT AND RECOMMENDATION</u>

In November 2023, Defendant Meilyn Vázquez-Alvarez ("Vázquez") was indicted along with four others—three of whom she shares family ties with—and charged with drug trafficking. (ECF No. 3). Specifically, she was charged with conspiracy to possess with intent to distribute 5 kilograms or more of cocaine from in or about March 2023 to the return of the Indictment and two counts of possession with intent to distribute 500 grams or more of cocaine on or about specific dates in 2023. (*Id.*).

Vázquez seeks to sever her case from that of her co-defendants and to suppress a post-arrest statement she made to law enforcement. (ECF No. 139, 140). The government opposed both motions. (ECF No. 148, 149). Vázquez replied solely on the severance issue. (ECF No. 158). U.S. District Judge Pedro A. Delgado-Hernández referred both motions to me for a Report and Recommendation. (ECF No. 230). For the reasons set forth below, I recommend both motions be **DENIED**.[1]

---

[1] Vázquez also filed a motion in limine seeking to preclude the government from introducing "other acts" evidence under Rule 404(b) of the Federal Rules of Criminal Procedure relating to a visit she made to a local correctional facility on July 31, 2023, where a K-9 "assertedly marked [her] positive to controlled substances," but no "no drugs [were] found or seized on her person." (ECF No. 141). That motion was also referred to me. (ECF No. 230). Because the government has indicated that it "does not intend to present the facts regarding the k-9 alerting to the presence of narcotics on the person of the defendant," (ECF No. 159), I recommend that Vázquez's motion be deemed **MOOT**.

**DISCUSSION**

**1. Suppression**

Vázquez was arrested along with her mother, co-defendant #4. (ECF No. 139). According to an FBI report, after Vázquez signed an "advice of rights form," she was told that she was arrested for "conspiracy to traffic cocaine for mailing packages containing cocaine." (ECF No. 139-1 at 1). Vázquez volunteered that "she mails several packages a month of gifts." (*Id.*). She was then "shown photos of her and her mother Sandra mailing packages" and "told she would go to prison, not jail for mailing multiple kilograms of cocaine despite having no arrest record along with her mother." (*Id.*). Vázquez chose not to talk and the interview ended. (*Id.*). A second report of the events that same day described Vázquez as "visibly distraught" when the cocaine parcels came up. (ECF No. 139-2 at 2). Pertinent here, it added that "[w]hile agents finished processing the booking paperwork and loading Vázquez-Alvarez into the vehicle to be transferred to the Guaynabo Detention Center," Vázquez told one of the agents that "if they would let my mom go then I would be willing to talk." (ECF No. 139-2 at 2-3). Vázquez seeks to suppress this statement.[2]  (ECF No. 139 at 3).

In support, Vázquez argues that the agents "were aware and knew how much [she] honored and respected her mother" and deployed psychologically coercive tactics that rendered her subsequent statement involuntary. (ECF No. 139 at 3). Specifically, she claims the agents told her that "she would go to prison for mailing multiple kilograms of cocaine despite having no arrest record along with her mother," making her feel responsible for what would happen to her mother. (*Id.* at 2). And she adds that agents also threatened her with losing her business "for which she had worked so hard to put up." (*Id.* at 2-3).

---

[2] Vázquez also requested the Court hold a hearing "in the event there are contested facts warranting the same." (ECF No. 139 at 4). However, as stated by the government, here there are no contested facts; therefore, there is no need for a hearing. (ECF No. 149 at 2).

For its part, the government argues that Vázquez failed to show how her statement was "coerced," and regardless, the challenged statement "occurred spontaneously after the interview concluded and are not statements barred by the fifth amendment." (ECF No. 149 at 2). The government relies on *Jackson* for the proposition that "[a] volunteered statement is not the product of interrogation and is not subject to suppression, even if warnings have not been provided." (*Id.* at 3) (quoting *United States v. Jackson*, 544 F.3d 351, 357 (1st Cir. 2008)). And while that may be the case, it is only true "when unaccompanied by any actual coercion or other circumstances calculated to undermine the suspect's ability to exercise his free will." *Id.* at 360. Thus, the fact that the statement may have been spontaneous is not enough to deny Vázquez's motion outright.

Determining "whether the totality of the attendant circumstances demonstrate that the defendant's statement was knowing and voluntary" is a "matter of law," which in turn includes "subsidiary findings of fact." *United States v. Rojas-Tapia*, 446 F.3d 1, 3 (1st Cir. 2006). Here, Vázquez hangs her hat on the agents' references to her mother as excreting psychological pressure such that her statement was the product of coercion. And she relies on the Ninth Circuit's opinion in *Tingle*, where the agents used the defendant's daughters to elicit a confession. (ECF No. 139 at 4) (citing *United States v. Tingle*, 658 F.2d 1332 (9th Cir.1981)). But in reviewing *Tingle* and other Ninth Circuit case law, the First Circuit recognized that while "particularly cognizant of the risk of coercion when reviewing interrogations where officers invoke references to a family member, our cases also emphasize that discussion of a family member, on its own, is not per se coercive. Instead, we must closely examine the specific manner in which the officer discussed the relative and weigh such references against the defendant's susceptibility to coercion." *United States v. Hufstetler*, 782 F.3d 19, 23-24 (1st Cir. 2015).

The undisputed facts here show that when Vázquez was warned that there would be consequences for not cooperating with law enforcement, she elected not to speak to the agents. Her

will was not overborne. *See Bryant v. Vose*, 785 F.2d 364, 367-68 (1st Cir. 1986) (observing that the voluntariness of an admission depends on "whether the will of the defendant [was] overborne so that the statement was not his free and voluntary act"). Moreover, Vázquez and her mother had both been arrested pursuant to an Indictment. This places the agents' "statements in context." *Hufstetler*, 782 F.3d at 24. "Without more, an officer's truthful description of the family member's predicament is permissible since it merely constitutes an attempt to both accurately depict the situation to the suspect and to elicit more information about the family member's culpability." *Id.* (citations omitted). And while it may not have been what Vázquez wanted to hear, Vázquez does not point to any falsity in the agents' representations. After all, as charged, Vázquez and her mother were each facing a minimum term of imprisonment of five years and a maximum of life along with a forfeiture allegation of at least $1,250,000.00 that included substitute assets. (ECF No. 3). In addition, Vázquez herself describes her relationship with her mother as one of "respect," and gives no indication that it would make her "unusually susceptible to psychological coercion." *United States v. Jackson*, 918 F.2d 236, 242 (1st Cir. 990) (finding that "there [was] no evidence that an especially close relationship existed between Jackson and his sister, or that Jackson was unusually susceptible to psychological coercion on that account or any other"). This makes Vázquez's situation different from Tingle's, a mother that was threatened with having her minor children taken away from her.

As recognized by the First Circuit, "statements that a defendant's refusal to cooperate may lead to an extended separation from his or her loved ones may contribute to a finding that the defendant's confession was coerced . . . [h]owever, the mere fact that a defendant is placed under some psychological pressure by agents does not necessarily render a confession involuntary." *United States v. Jacques*, 744 F.3d 804, 811 (1st Cir. 2014) (affirming denial of suppression where officers commented "on the failing health of Jacques's elderly father, suggesting that continued resistance might deprive Jacques of crucial years with his family"). Such is the case here, any resulting

psychological pressure from the agents' comments was not enough to render Vázquez's subsequent post-interview statement involuntary. Finally, if more were needed, the agents did not falsely promise to Vázquez that her mother would be released if she cooperated. Instead, it was Vázquez that conditioned her cooperation with her mother's release. (ECF No. 139-2 at 2-3). I thus find that Vázquez's statement, however incriminatory, was voluntary and recommend it not be suppressed. Therefore, I recommend that Vázquez's motion to suppress be **DENIED**.

### 2. Severance

Vázquez asserts that her trial should be severed from all other co-defendants for two reasons. The first is "mutual exclusivity" in that her "defense will be that of lack of knowledge and criminal intent, consisting in that she had no actual or inferred knowledge of the content of the packages mailed by her which she did not prepare while running errands for her brothers and co-defendants." (ECF No. 140 at 1-2). The second is "preserving [her] right to confront and cross examine witnesses." (*Id.* at 2). This applies to "co-defendants whose hearsay incriminating statements are being offered against [her rights] guaranteed by the Sixth Amendment., but which right is precluded because of their inability to testify in a joint trial scenario. Considering the right to remain silent as guaranteed by the Fifth Amendment." (*Id.*)

In response, the government deemed Vázquez's arguments to be "hypothetical" and "speculative" and iterated that "[c]aselaw strongly favors joint trials, with more emphasis on cases like the instant case, where the co-defendants are charged as part of a conspiracy." (ECF No. 148 at 1-2). It highlighted that Vázquez had "not offered what statements, if any, she would elicit from a co-defendant if a severance were to be granted." (*Id.* at 5). And it added that admission of any co-conspirator statements at trial would not be barred by the Confrontation Clause. (*Id.*). For her part, Vázquez replied. (ECF No. 158). Rather than fill the vacuum illustrated by the government, Vázquez argued that since her brothers are asserting their innocence, should she prevail in her defense that she

5

was unwitting participant that only "ran errands for her brothers," they would "have to settle for guilty verdicts or vice versa." (*Id.* at 2).

For starters, it is unclear the extent of the severance sought by Vázquez. She asks that her trial be severed from all co-defendants, yet only specifies her two brothers. (ECF No. 140, 158). There is no mention of the remaining two co-defendants, one of which is her mother. As such, she provides no basis as to grant her request that she "be tried individually and subsequently" to her co-defendants. (ECF No. 158 at 3).

Second, Vázquez has not met her burden of showing prejudice. *See United States v. McLaughlin,* 957 F.2d 12, 18 (1st Cir. 1992) ("A motion for severance is addressed to the sound discretion of the trial court and to prevail, a defendant must make a strong showing of prejudice."). Rule 14 of the Federal Rules of Criminal Procedure allows for courts to, among others, sever a defendant's trial upon a showing of prejudice. Fed. R. Crim. P. 14(a). But, "[b]ecause the general rule is that those indicted together are tried together to prevent inconsistent verdicts and to conserve judicial and prosecutorial resources, severance is particularly difficult to obtain where, as here, multiple defendants share a single indictment." *United States v. Soto-Beniquez,* 356 F.3d 1, 29 (1st Cir. 2003) (quoting *United States v. O'Bryant,* 998 F.2d 21, 25 (1st Cir. 1993)). The issue is particularly uphill for Vázquez, who seeks severance from those charged as her co-conspirators in a single indictment. "Because conspiracy cases often involve evidence that is admissible against all members of the conspiracy, 'in the context of conspiracy, severance will rarely, if ever, be required.'" *Soto-Beniquez,* 356 F.3d 1, 29-30 (quoting *United States v. DeLuca,* 137 F.3d 24, 36 (1st Cir. 1998) (cleaned up)).

Vázquez's first argument for severance is unavailing. To be sure, Vázquez asserts that her defense is antagonistic to her brothers' because she alleges that the packages she prepared and mailed did not have contraband and it was only those she mailed for her brothers that contained cocaine. And she adds that her brothers maintain their innocence. (ECF No. 140 at 2). Yet, that, in and of itself

is not necessarily antagonistic. For example, her brothers could assert that they themselves received those packages they simply passed along. Vázquez's situation is more akin to "mere fingerpointing among codefendants – i.e., the familiar 'he did it, not I' defense – [which] normally is not a sufficient ground for severance." *United States v. Pena-Lora*, 225 F.3d 17, 33 (1st Cir. 2000) (citing *Zafiro v. United States*, 506 U.S. 534, 538-39, (1993) (declining to adopt "bright line rule" that conflicting defenses inevitably require severance); *United States v. McLaughlin*, 957 F.2d 12, 18 (1st Cir. 1992) ("The fact that two defendants assert antagonistic defenses does not, per se, require severance, even if defendants are hostile or attempt to cast blame on each other.")). In sum, this is not the type of case where the antagonism rises to the level "that if the jury believes one defense, it is compelled to convict the other defendant." *United States v. Angiulo*, 897 F.2d 1169, 1195 (1st Cir. 1990). In any event, should Vázquez ultimately proceed to trial with any of her co-defendants, any potential prejudice can be cured with an instruction to the jury to consider each individual defendant separately as well as each charge. *See Zafiro*, 506 U.S. at 540-41.

Vázquez's second argument is equally unavailing. Vázquez argues that severance is required to preserve her "right to confront and cross examine witnesses as well as co-defendants whose hearsay incriminating statements are being offered against [her]." (ECF No. 140 at 2). To begin with, as pointed out by the government, the latter is a faulty premise. "Although hearsay testimony generally is not admissible, an out-of-court statement made by a defendant's co-conspirator 'during and in furtherance of the conspiracy' is not hearsay and may be introduced into evidence. *United States v. Paz-Alvarez*, 799 F.3d 12, 29 (1st Cir. 2015) (citing Fed. R. Evid. 801(d)(2)(E), 802).

Moreover, while Vázquez states she would like to call her co-defendants as witnesses, she does not assert that they are willing to testify nor does she proffer what they would say if they agreed to do so. And while the government noted as much in its opposition, Vázquez's reply only added co-conspirator statements she believes the government will introduce against her. Thus, Vázquez fails to

meet the requirements set for by the First Circuit in *Drougas*: "the movant must demonstrate: (1) a bona fide need for the testimony; (2) the substance of the testimony; (3) its exculpatory nature and effect; and (4) that the co-defendant will in fact testify if the cases are severed." *United States v. Drougas*, 748 F.2d 8, 19 (1st Cir. 1984). *See United States v. Rivera-Rivera*, 146 F.4th 59, 82 (1st Cir. 2025) (applying *Drougas*). Therefore, I recommend that Vázquez's motion to sever be **DENIED**.

## CONCLUSION

For the foregoing reasons, I recommend Vázquez's motion to suppress and motion to sever be **DENIED** and that Vázquez motion in limine be deemed **MOOT**.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(d) of the Local Rules of this Court. Any objections to it must be specific and must be filed with the Clerk of Court within fourteen days from the date it is filed. Failure to file timely and specific objections to the report and recommendation is a waiver of the right to appellate review. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Davet v. Maccorone*, 973 F.2d 22, 30-31 (1st Cir. 1992); *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988); *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987).

**IT IS SO RECOMMENDED**.

In San Juan, Puerto Rico this August 4, 2026.

*s/ Mariana E. Bauzá-Almonte*
MARIANA E. BAUZÁ-ALMONTE
United States Magistrate Judge
